Davis & others *v.* Allen.

---

## LORENZO D. DAVIS & others *vs.* DANIEL B. ALLEN.

An officer of a voluntary association, who has testified to what he knows of its expenses and management, cannot, for the purpose of refreshing his recollection, be shown an account book of the association, the entries in which he did not make, and does not know who did.

By the articles of a mining association formed in Massachusetts, to go to California, it was agreed that the association should buy a vessel, and furnish her with supplies "for the period of eighteen months from the day of sailing, for which term the company is to continue;" that the owners of each share should pay a certain sum to the treasurer, and either go on the expedition themselves or furnish substitutes; that each member or substitute who should go should have his board and medical attendance at the expense of the association, and should for said period of eighteen months devote himself to the service of the association, under the direction of its officers, and deliver to the treasurer all gold, money or other things obtained by him; that the business of the association should be managed by a board of directors; that the profits and the losses should be equally divided among the shares; that after arriving in California the affairs of the association should be stated monthly, " and a division of profits may be then made to such extent as may be decided by the vote of two thirds of the members and substitutes present and voting," provided that no substitute should receive more than the share stipulated for between him and the owner; that at the expiration of the eighteen months the association should by vote decide whether to return home, or extend operations for a lim ited period; and that " if at any time two thirds of the members present and voting shall decide to sell

the vessel, &c., all owners shall be bound to join in the sale and conveyance; and, in all cases, the substitute shall have the same right to vote as his principal would have, and each share shall be entitled to one vote." A month after the arrival of the expedition in California, by direction of the officers of the association, and with the general assent of all the members and substitutes in California, the association was dissolved, the vessel and remaining outfits sold, and the profits divided by deducting all the expenses of the association from so much of the amount of the sale of the ship and outfits as equalled the original cost thereof, and dividing the residue of so much of that amount among the shareholders; and in the excess of such sale over the cost, and in the earnings of the association, giving each substitute one half of his principal's proportion. *Held,* that a substitute was entitled to hold the sum so distributed to him, as against his principal, by contract with whom he was to "receive two thirds of all property and sums to which" his "share should become entitled under said articles, until the association is dissolved," and agreed during the term of said association and during the time to which it might be extended to devote himself to its service, and comply with its regulations.

ACTION OF CONTRACT on an agreement under seal made at New Bedford on the 1st of March 1849, by which the plaintiffs covenanted and agreed that the defendant should "be permitted to and have the right to go in Schooner Emeline, on the contemplated expedition to California, as substitute for the party of the first part, and representative of one share of said schooner and outfits, with all the right of a substitute, as set forth in the constitution and by-laws of the New Bedford and California Mining Association," (the material parts of which are copied in the margin,*) and "that, in consideration of the ser-

---

* The subscribers hereby associate themselves together for joint operations, under the name of the New Bedford and California Mining Association. The object of the association is an expedition to California in pursuit of gold, to be procured by mining or washing, or by other means and employments, as may be found expedient. The company shall buy the schooner Emeline, of New Bedford, and furnish her with provisions, and other things necessary for the support and comfort of the members of the company, and substitutes, for the period of eighteen months from the day of sailing from New Bedford, for which term this company is to continue.

Each of the subscribers owns the number of shares set against his name, and for each share shall, as the company may direct, pay into the treasury the sum of three hundred dollars. Each owner shall go on said expedition himself, or for each share owned by him shall furnish a substitute, to be approved by the company.

Each member who goes in the vessel, and each substitute, shall, during the term of this association, have his board and medical attendance at the expense of the company ; and shall, from the time of leaving New Bedford to the end of eighteen months therefrom, devote himself with his best skill and ability to the

vices to be rendered by said Allen, according to the terms here-after set forth, the said Allen shall be entitled to receive, and

service of the company, and in every way in his power promote its interests, under the direction of its officers, and shall faithfully report and deliver to the treasurer, as soon as received, all gold, money, or other things obtained by him; and no member or substitute shall hold anything which he may obtain or earn, to his own use, nor engage in any business or enterprise, except for the use and benefit of the company.

The company shall, at convenient time, by ballot, choose a president, secretary, and three directors, who shall direct and manage the business of the company, and be called the board of directors.

Each share shall be entitled to an equal division of profits, and bear an equal proportion of losses. The sickness of any member or substitute shall not diminish the profits of the share owned or represented by him, unless such sickness shall be occasioned by immorality, in which case it shall work such forfeiture as the company by a vote of two thirds may decide.

In case any member or substitute shall die during the continuance of this association, his legal representatives shall be entitled, on the winding up of the company, to receive the same share that such person would have been entitled to, if living; equity being observed between the principal and substitute, in case of the death of a substitute.

If any owner of a share shall fail to go in said vessel when ready for sea, or to furnish a suitable substitute for each share owned by him, such owner shall forfeit said share to the company. If any member shall desert the company, he shall forfeit his share to the company. If any substitute shall desert the company, he shall forfeit all his interest in the earnings of the company by his agreement with his principal, and the owner of the share shall have no interest in the earnings after such desertion.

In case of any disagreement or misunderstanding between members or substitutes, the same shall be referred to the board of directors, and their decision shall be final.

A statement of the affairs of the company shall be made on the first Monday of each month, after arriving in California, and a division of profits may be then made to such extent as may be decided by the vote of two thirds of the members and substitutes present and voting; and the treasurer shall take receipts and keep regular accounts of the amounts paid to each; provided, that no substitute shall receive any more than the share stipulated for between him and the owner, unless by virtue of a special power of attorney, and the balance shall be kept with reasonable care, for the owner of the share.

At the expiration of eighteen months from the time of sailing from New Bedford, the company shall, by vote, decide whether to return home, or extend operations for a limited period. If a majority shall decide to come home in the

shall receive, two thirds of all property and sums to which one share represented by said Allen shall become entitled under said constitution and by-laws, until the association and company is dissolved; and the said Allen assents to the above terms, and hereby covenants and agrees with said party of the first part, that he will, as such substitute, go in said vessel when ready for sea, and during the term of said association, and during the time to which it may be extended, will devote himself faithfully to the trust, and use his best skill and ability to the service of said association, and in all respects comply with the regulations of the association, constitution and by-laws of said company, and hold himself subject to their penalties."

At the trial in the court of common pleas before *Sanger*, J., there was evidence that the plaintiffs were joint owners of one share in the association, from its beginning to its dissolution; that the shareholders paid $312 per share for the purchase of the Emeline and outfits, taking bills of sale of fractional parts of the vessel; that the vessel sailed on the 18th of March, and arrived at San Francisco on the 16th of September, and the greater portion of the members of the company arrived at the mines about the 5th of October 1849, carrying with them some of the provisions from the vessel; that about four weeks after-

---

vessel, that shall be decisive, and division of the property, except vessel and outfits for the homeward voyage, may be made, or the division may be deferred until arrival at New Bedford. If, in such case, any individual shall desire to remain in California, he may do so on such terms as a majority shall decide, and not otherwise. If a majority shall decide to stay for a definite period, the company shall do so; provided, however, that they shall pay to such members as wish to withdraw a fair value for their interest in vessel and property on board, which value shall be decided by three persons, one chosen by the majority, one by the minority, and the third by those two; and such persons shall, upon receiving said award, convey their interest in the vessel, &c., to the other members.

If at any time two thirds of the members present and voting, shall decide to sell the vessel, &c., all owners shall be bound to join in the sale and conveyance. In all cases, the substitute shall have the same right to vote as his principal would have, and each share shall be entitled to one vote.

All members and substitutes shall obey the officers of the association, for the time being, and such subordinate officers as may be appointed by them.

wards the association was dissolved, because all the members and substitutes in California thought best for the association to break up ; that the defendant did all that the contract required him to do, and the association was broken up without his fault or procurement, although he was in favor of its being broken up ; and that after the dissolution of the company the defendant busied himself no farther about the affairs of the company or of the plaintiffs.

It also appeared that the gross amount of gains of the company (other than those resulting from sales of ship and outfits) was less than $1000 ; that the expenses of the association to the time of its dissolution were about $4000, of which $2000 wer paid for a house lot in Sacramento ; that before the dissolution the Emeline and the remaining outfits were sold at an advance over their cost by a vote of the association, and under the direction of the directors and other officers of the association, and a division made, under such direction, and with the general assent of all the members and substitutes then in California, as follows : There were two accounts kept. One, called " Company Account," was credited with so much of the accounts of sales of ship and outfits as equalled the cost price of the same, and was charged with all the expenses of the association, and the balance was divided among the shareholders. The other account, called " Stock Account," consisted of the earnings of the association, and of the excess of sales over cost prices of ship and outfits, and was charged with no company expenses, and in the balance each substitute received half of his principal's proportion, and the other half was remitted to the shareholder. The amount thus paid to the defendant was the sum now sued for.

A witness, who was a director of the company in California, testified that he had knowledge of the expenses and management of the financial affairs of the concern ; and was permitted to testify so far as his knowledge went. In order to refresh his memory as to the items of expense, the plaintiffs proposed to show him a book purporting to be the " Expense Account " of the association, for the purpose of afterwards asking him to

testify from his own recollection as to items of expense. But the book was not in the handwriting of the witness, nor was any entry in it made by him, nor did he know who made the entries, nor did it appear whence the book came. And the judge did not allow the book to be so used by the witness.

The plaintiffs requested the court to give the following instructions to the jury :

" 1st. That if the jury found the expenses of the company to exceed the gains, (other than from sales of ship and outfits,) then no such profits, property or sums came to the concern as the substitutes were entitled to a share in, even on full performance of the contract and continuation with the company for eighteen months; and especially so in case the company dissolved before the expiration of eighteen months.

" 2d. That if the company broke up before the term of eighteen months, the ship and outfits, and their proceeds, belonged to the shareholders, and the substitutes were entitled to no share in them.

" 3d. That this substitute, upon the contract, would be entitled to no part of the money due to the share represented by him unless the company lasted eighteen months.

" 4th. That, upon the contract, neither the company nor any of its officers had any authority, previously to the expiration of said eighteen months, to adjust and pay any of the proceeds of the vessel and outfits to this substitute, in such a way as to bind these defendants.

" 5th. That even if the excess of sales over cost of ship and outfits could be considered profits, property or sums in which the substitutes had any interest in any event, yet that the expense of the association should have been charged to that fund, so as to leave the net amount, instead of the gross amount, as the fund in which the substitutes had rights."

The court declined to give the jury any of these instructions; but did instruct them that " it was competent for the association, under the constitution and by-laws, by a vote of two thirds of the members and substitutes present and voting, to decide what should be divided as profits, and to which account the expenses

should be charged; and that if by such a vote the expenses were charged to the company account, they were rightly so charged and if by such a vote the gross excess of sales over cost of shi₁ and outfits was divided as profits, giving the substitutes an interest therein, it would be a correct division; that the expenses were rightly charged to the company account; that the gross excess of sales over cost of ship and outfits was rightly divided, giving the substitutes an interest therein; that under the contract with the plaintiffs, the defendant was entitled to two thirds of the profits, made up as aforesaid, accruing to the plaintiffs' share, which the defendant, as their substitute, represented, and this, though the association was dissolved before the expiration of the eighteen months; that if the amount shown to have been received by the defendant was less than such two thirds, the plaintiffs could recover nothing; if it was greater than such two thirds, the plaintiffs could recover such excess." The jury re turned a verdict for the defendant, and the plaintiffs alleged exceptions.

*T. M. Stetson*, for the plaintiffs, cited *Rice* v. *Dwight Manuf. Co.* 2 Cush. 87; *Davis* v. *Maxwell*, 12 Met. 290; *Stark* v. *Parker*, 2 Pick. 267; *Olmstead* v. *Beale*, 19 Pick. 528; *Adams* v. *Nichols*, 19 Pick. 275; *Harrington* v. *Dennie*, 13 Mass. 93; *Brown* v. *Harris*, 2 Gray, 360; 1 Parsons on Con. 519, 522 & note; *Cutter* v. *Powell*, 2 Smith's Lead. Cas. 1, & notes; Story on Con. § 141; Chit. Con. (8th Amer. ed.) 59; 1 Greenl. Ev. §§ 436, 437, & cases cited.

*J. F. Dearborn*, for the defendant, cited *Field* v. *Woodmancy*, 10 Cush. 427.

BY THE COURT. The book offered as a memorandum to refresh the recollection of the witness was rightly excluded from his inspection. Inasmuch as he had never seen it before, it could not be the means of reviving his memory of past transactions. It was in effect nothing but a method of suggesting to him the fact concerning which he was called to testify, and does not come within any of the tests by which the use of memoranda to aid the recollection of a witness is regulated and governed. 1 Greenl. Ev. §§ 436–439.

The contract by which the mining association was created, and under which the defendant served as a substitute for the plaintiffs on the voyage to California and after the arrival of the company in that country, is obscure and indefinite in its provisions; but upon careful consideration we are of opinion that the construction put upon them by the court below was correct.

*Exceptions overruled.*